# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GERALDINE I. SCALES,                    )
as Administratrix of the                )
Estate of Lee Norman Scales,            )
                                        )
            Plaintiff,                   )
                                        )
        v.                              )        1:17cv539
                                        )
SSC WINSTON-SALEM OPERATING,            )
COMPANY, LLC,                           )
                                        )
            Defendant.                   )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "SSC Winston-Salem Operating Company LLC d/b/a Brian Center Health and Retirement/Winston-Salem's Motion to Compel Arbitration and Stay Proceedings" (Docket Entry 2) (the "Arbitration Motion"). For the reasons that follow, the Court will grant in part and deny in part the Arbitration Motion.[1]

---

[1] The undersigned United States Magistrate Judge will enter an order rather than a recommendation regarding the Arbitration Motion because pretrial motions of this sort do not appear in the list of matters requiring a recommendation, see 28 U.S.C. § 636(b)(1), and because federal appellate courts uniformly approve disposition of such motions by Magistrate Judges, see Virgin Islands Water & Power Auth. v. General Elec. Int'l Inc., 561 F. App'x 131, 133-34 (3d Cir. 2014) (explaining that "motions to compel arbitration and stay the proceedings are not [dispositive]" and that "we see no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration"); Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 69 n.2 (1st Cir. 2010) (explaining that "motions to compel arbitration are non-dispositive motions" in regard to which a Magistrate Judge can "issue[] a definitive order (rather than a report and recommendation)" (citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010))); see also, e.g., Smith v. American Gen. Fin., No. 3:11cv97,

**PROCEDURAL HISTORY**

Alleging various state-law torts related to the death of Lee Norman Scales ("Mr. Scales"), Geraldine I. Scales, as Administratrix of the Estate of Lee Norman Scales (the "Plaintiff"), initiated this lawsuit against SSC Winston-Salem Operating Company LLC d/b/a "Brian Center Health and Retirement/Winston-Salem" (the "Defendant") in the Superior Court of North Carolina for Forsyth County. (See Docket Entry 6.) Defendant removed the lawsuit to this Court on the grounds of diversity jurisdiction (see Docket Entry 1 at 1-3)[2] and immediately moved to compel arbitration (see Docket Entry 2). More specifically, through the Arbitration Motion, Defendant seeks an order either (1) compelling arbitration in accordance with "the Agreement for Dispute Resolution Program made between the parties" or (2) authorizing discovery regarding the authority of Geraldine Scales ("Mrs. Scales") "to enter into the arbitration agreement for her husband," Mr. Scales. (Id. at 2; see also Docket Entry 3 at 4-5.) In response, Plaintiff asserts that Mrs. Scales lacked authority to execute the "Agreement for Dispute Resolution Program"

---

2011 WL 1059836 (W.D.N.C. Mar. 22, 2011) (granting, as Magistrate Judge, motion to compel arbitration); Jackman v. Jackman, Civ. Action No. 06-1329, 2006 WL 3792109, at *2 (D. Kan. Dec. 21, 2006) (concluding that "the order to stay proceedings and compel arbitration is non-dispositive and is within the magistrate's authority").

2  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

(Docket Entry 2-1) (the "Agreement") on Mr. Scales's behalf, and

asks the Court to deny the Arbitration Motion. (See Docket Entries

11, 11-1.)

## **DISCUSSION**

### **I. Applicable Legal Standards**

The Federal Arbitration Act (the "FAA") renders enforceable

written arbitration contracts, "save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C.

§ 2.[3] Pursuant to Section 4 of the FAA, "upon being satisfied that

---

3 The Arbitration Motion does not specify the statutory basis on which Defendant moves to compel arbitration and stay proceedings. (See Docket Entry 2.) However, in its memorandum in support of the Arbitration Motion, Defendant asserts that "the Agreement . . . is enforceable under both the . . . FAA[] and the North Carolina Uniform Arbitration Act (UAA)." (Docket Entry 3 at 2 (citing "N.C. Farm Bureau Mut. Ins. Co. v. Sematoski, 195 N.C. App. 304, 306 (N.C. Ct. App. 2009)").) As an initial matter, the "UAA[] is applicable to agreements to arbitrate made on or after 1 August 1973 and prior to 1 January 2004." North Carolina Farm, 195 N.C. App. at 307, 672 S.E.2d 90, 92. The Agreement bears the date of March 31, 2015 (see Docket Entry 2-1 at 9), and thus the UAA does not govern it. Moreover, the FAA preempts state law, Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995), including the UAA, see WMS, Inc. v. Weaver, 166 N.C. App. 352, 357-58, 602 S.E.2d 706, 710 (2004). Here, the Agreement specifies that it implicates "interstate commerce" and that, "[a]s such, the . . . FAA[], not state law, will control and applies to the arbitration of disagreements between the parties and the parties agree to incorporate such laws into this Agreement." (Docket Entry 2-1 at 6.) Under these circumstances, the FAA, not the UAA, applies. See WMS, 166 N.C. App. at 358, 602 S.E.2d at 710 (concluding that the FAA governed contract involving commerce); see also Advantage Assets, Inc. II v. Howell, 190 N.C. App. 443, 445-46, 663 S.E.2d 8, 10 (2008) (observing that North Carolina's Revised Uniform Arbitration Act (the "RUAA") applies only to contracts executed after December 2003, rejecting contention that the RUAA applied to 2001 contract, and concluding that the FAA

the making of the agreement for arbitration . . . is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . [However, i]f the making of the arbitration agreement . . . be in issue, the [C]ourt shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Accordingly, the Court can compel arbitration "under the FAA only when there is 'a judicial conclusion' that there is a validly formed, express agreement to arbitrate." Dillon v. BMO Harris Bank, N.A., 173 F. Supp. 3d 258, 263 (M.D.N.C. 2016) (quoting Granite Rock Co. v. International Bhd. of Teamsters, 561 U.S. 287, 303 (2010)), appeal dismissed sub nom. Dillon v. Bay Cities Bank, No. 16-1373 (4th Cir. Apr. 5, 2016). In making this assessment, the Court looks to state-law contract principles. Id.; see also Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009) ("State law, therefore, is applicable to determine which contracts are binding . . . and enforceable under [the FAA] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (brackets, internal quotation marks, and emphasis omitted)); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

---

applied to the contract "because [it] was 'made pursuant to a transaction involving interstate commerce'").

The party seeking to compel arbitration bears the burden of establishing the existence of "an arbitration provision that purports to cover the dispute." Dillon, 173 F. Supp. 3d at 263. If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute. See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015) ("[T]he party seeking a jury trial [under Section 4] must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support." (citing Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)), cert. denied, __ U.S. __, 136 S. Ct. 1656 (2016); see also Oppenheimer, 56 F.3d at 358 ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."). "This standard is akin to the burden on summary judgment." Chorley, 807 F.3d at 564; accord Erichsen v. RBC Capital Mkts., LLC, 883 F. Supp. 2d 562, 566 (E.D.N.C. 2012) (explaining "that the standard for deciding a motion to compel arbitration brought under the . . . FAA[], 9 U.S.C. § 4, is a standard similar to a motion for summary judgment").

In light of these respective burdens, courts typically grant leave to conduct discovery if the parties dispute the enforceability of an arbitration agreement. See, e.g., Dillon v.

BMO Harris Bank, N.A., No. 1:13cv897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) ("Accordingly, if a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration provision." (collecting cases)); see also Livingston v. Assocs. Fin., Inc., No. 01 C 1659, 2001 WL 709465, at *2 (N.D. Ill. June 25, 2001) (observing, in analyzing request to conduct discovery in response to motion to compel arbitration, that a "party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove"), report and recommendation adopted, No. 01 C 1659, 2002 WL 424352 (N.D. Ill. Mar. 6, 2002).  Such discovery must remain "tailored to matters pertinent to the disposition of the petition to compel arbitration and/or stay litigation," namely "issues relating to the making and performance of the agreement to arbitrate."  Dillon, 2015 WL 6619972, at *3.  These issues include "generally applicable contract defenses," id. at *3 & n.5 (internal quotation marks omitted), such as lack of authority to execute the agreement, see, e.g., Smith Wilson Co. v. Trading & Dev. Establishment, 744 F. Supp. 14, 16 (D.D.C. 1990) (explaining that, "while a signed arbitration agreement leaves a court with no choice but to compel arbitration, this proposition applies only if the individuals who signed the agreement are legally authorized to bind the respective parties" (citation omitted)).

## II. Factual Background

This lawsuit arises from allegedly negligent care Mr. Scales received at a nursing home Defendant operates in North Carolina. (See Docket Entry 6.)  Defendant contends that the Agreement governs Plaintiff's claims (see Docket Entry 2 at 1-2) and asks the Court to compel arbitration and stay this action, "including any potential merits-based discovery," pending arbitration (id. at 2). In support of this request, Defendant submitted the Agreement as well as various notices and forms signed by Mrs. Scales.  (See id. at 1-2; see also Docket Entries 2-1, 2-2.)

Entitled "Agreement for Dispute Resolution Program," the Agreement describes Defendant's three-step "Dispute Resolution Program" (the "DPR") (Docket Entry 2-1 at 2, 4), which culminates in binding arbitration (see id. at 4-5).  The Agreement states that acceptance of the DPR "is voluntary" (id. at 2 (all-cap font omitted)) and does not impact an individual's admission to Defendant's facilities (id.).  The Agreement provides two options for execution, depending on the resident's competence.  In relevant part, the first option states:

**If resident is competent, complete this section:**

_____ **Date:_____**
Signature of Resident
(*Sign where resident is mentally competent to consent to this Agreement under State law*)

(Id. at 8 (emphasis in original).)  The second option states:

**If resident is adjudged incompetent, complete this section:**

**I am the spouse, responsible party, legal guardian or power of attorney of the resident and have the authority to sign the agreement on his/her behalf. In signing this Agreement, the Legal Representative or Family Member binds both the Resident and themselves individually.**

_____  **Date:_____**
Signature of Legal Representative or Family
Member

(Id. at 9 (emphasis in original).)  Each section also provides signature lines for two Facility Witnesses and one Facility Representative.  (See id. at 8-9.)  The latter section of the Agreement contains the dated signatures of Mrs. Scales and a Facility Representative, Samantha Sutphin, but no witness signatures.  (See id. at 9; see also Docket Entry 2-2 at 14.)

In response to the Arbitration Motion, Plaintiff submitted the "Affidavit of Geraldine I. Scales (RE: Defendant's Motion to Compel Arbitration)."  (See Docket Entry 11 at 4-5 (the "Affidavit").) The Affidavit states that Mrs. Scales "filed this lawsuit in [her] representative capacity" as "the duly appointed administratrix of the estate of [her] husband, [Mr.] Scales."  (Id. at 4.)  It further states that, on March 31, 2015, Mr. Scales "was admitted to Brian Center Health and Retirement/Winston-Salem ('Brian Center Winston-Salem') for short term rehabilitation," and Mrs. Scales "went to Brian Center Winston-Salem and was told by a member of the staff of Brian Center Winston-Salem that [she] needed to sign [her] husband's admission paperwork."  (Id.)  Mrs. Scales avers that she

"signed the nursing home admission documents presented to [her] by the staff at Brian Center Winston-Salem," but that Mr. Scales "had not executed a Power of Attorney appointing [her] as his attorney-in-fact, and he had not authorized [her] to sign an arbitration agreement on his behalf." (Id. at 5.) She further states both that she "did not tell any staff member at Brian Center Winston-Salem that [she] had permission from [Mr. Scales] to sign an arbitration agreement" and that she and Mr. Scales never discussed "the content of the Brian Center Winston-Salem admission documents." (Id.) Finally, she attests that, to her knowledge, Mr. Scales "never saw or reviewed any of the Brian Center Winston-Salem admission documents that [she] signed" and "no member of the staff at Brian Center Winston-Salem ever discussed the admission documents with [Mr. Scales]." (Id.)

Plaintiff contends that Mrs. Scales lacked authority to execute the Agreement on Mr. Scales's behalf. (See id. at 1-2.) In contrast, "Defendant's position is that [Mrs.] Scales had apparent authority to enter the arbitration agreement on her husband's behalf." (Docket Entry 3 at 3.) Moreover, "[i]n the event Plaintiff denies she had the authority to enter into the arbitration agreement for her husband, Defendant requests discovery as to that issue." (Docket Entry 2 at 2.)

### III. North Carolina Agency Principles[4]

The North Carolina courts define agency "as the relationship which arises from 'the manifestation of consent by one person to another that the other shall act *on his behalf and subject to his control*, and consent by the other so to act.'" Hayman v. Ramada Inn, Inc., 86 N.C. App. 274, 277, 357 S.E.2d 394, 397 (1987) (emphasis in original). "An apparent agency is created where a person by words or conduct represents or permits it to be represented that another person is his agent when no actual agency exists." Knight Publ'g Co. v. Chase Manhattan Bank, N.A., 125 N.C. App. 1, 15, 479 S.E.2d 478, 487 (1997) (internal quotation marks omitted). Thus, under North Carolina law, "[a] principal is liable upon a contract duly made by his agent with a third person (1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." Investment Props. of Asheville, Inc. v. Allen, 283 N.C. 277, 285-86, 196 S.E.2d 262, 267 (1973).

The third category applies only if the third party "dealt with the agent in reliance [on his apparent authority], in good faith, and in the exercise of reasonable prudence." Norfolk S. Ry. Co. v.

---

4  North Carolina law applies to the Agreement. (See Docket Entry 2-1 at 6; Docket Entry 6 at 1.)

10

Smitherman, 178 N.C. 595, 599, 101 S.E. 208, 210 (1919). Moreover, the third party must have "*actually relied* upon the assertions of the principal regarding the purported agent's power at the time of the transaction." Knight Publ'g, 125 N.C. App. at 15, 479 S.E.2d at 487 (emphasis in original). As such, "[t]he law of apparent authority usually depends upon the unique facts of each case," and, "where the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact." Foote & Davies, Inc. v. Arnold Craven, Inc., 72 N.C. App. 591, 595, 324 S.E.2d 889, 893 (1985).

Furthermore, the marital relationship does not itself render one spouse the agent of the other. See Pitt v. Speight, 222 N.C. 585, 588, 24 S.E.2d 350, 351 (1943) ("A husband is not jure mariti the agent of his wife, and if such agency is relied upon it must be proven. It would seem, however, that no presumption arises by reason of the relationship that he is the agent of his wife." (citation and internal quotation marks omitted)). Instead, "[t]he agency must be proven." Id. at 288, 24 S.E.2d at 352. In other words, "[t]he [husband] may constitute the [wife] h[is] agent, but, to establish this, the evidence must be clear and satisfactory, and sufficiently strong to explain and remove the equivocal character in which []he is placed by reason of h[is] relation of [husband]." Id., 24 S.E.2d at 352 (internal quotation marks omitted). "The

agency of the [wife] for the [husband] may be shown by direct
evidence or by evidence of such facts and circumstances as will
authorize a reasonable and logical inference that [s]he was
empowered to act for h[im]. Slight evidence of the agency of the
[wife] for the [husband] is sufficient to charge h[im] where []he
receives, retains, and enjoys the benefit of the contract."
Norburn v. Mackie, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964)
(ellipsis and internal quotation marks omitted); see also Pitt, 222
N.C. at 588, 24 S.E.2d at 352 ("The husband may act as agent of his
wife, but in order to bind her, he must previously be authorized to
do so, or his act must, with full knowledge, be ratified."
(internal quotation marks omitted)).

Application of the apparent agency doctrine in the spousal
context remains a fact-specific task. See, e.g., Beaver v.
Ledbetter, 269 N.C. 142, 146, 148, 152 S.E.2d 165, 169-70 (1967)
(concluding that wife bore no liability for mortgage assumed by her
husband because the evidence did not establish that she "learned of
the existence of the [relevant] deed and of the assumption clause
therein," received any benefit from the deed, or ratified the
transaction between the third party and her husband); Bookman v.
Britthaven, Inc., 233 N.C. App. 454, 460-61, 756 S.E.2d 890, 895-96
(2014) (reversing denial of motion to compel arbitration and
remanding for further findings regarding apparent authority
factors, including whether (1) the husband or daughter "had
authority to bind [the nursing home resident] to the other

admission contracts; (2) whether the arbitration agreement fit into the scope of this potential authority; (3) whether there was any limitation on this potential authority; and (4) whether [the nursing home] was aware of any limitation on this authority if one existed"). The party seeking to enforce an arbitration agreement under the apparent authority doctrine bears the burden of establishing such authority. See Bookman, 233 N.C. App. at 461, 756 S.E.2d at 895.

## IV. Analysis

At present, the only evidence Defendant offers regarding Mrs. Scales's alleged authority consists of the Agreement and assorted paperwork executed by Mrs. Scales on March 31, 2015. (See Docket Entries 2-1, 2-2.)[5] Defendant maintains that these materials

_____

5 In its reply in support of the Arbitration Motion, Defendant also presents multiple arguments premised on facts not in the record. (See, e.g., Docket Entry 12 at 2 ("First, the passivity of Mr. Scales in allowing Mrs. Scales to sign the [Agreement] (and other admissions paperwork) and then, in no way, manifesting an objection to her signing such documents sufficiently invokes the apparent authority doctrine.").) For instance, Defendant argues "that Mr. Scales was clearly competent at the time the [Agreement] was signed" and offers to provide medical records establishing such competency "to the Court . . . if necessary." (Id. at 5 n.2.) Notably, although Defendant argues that Mr. Scales's alleged competency renders the Agreement enforceable under North Carolina's avoidance doctrine (see id. at 5-6), it does not address the effect, if any, of Mr. Scales's competency upon the Agreement's validity (see Docket Entry 2-1 at 8-9 (providing for execution by competent resident or, "[i]f resident is adjudged incompetent," by a third party)) or Defendant's ability to rely on Mrs. Scales's execution of the Agreement. (See generally Docket Entry 12.) Regardless, the allegations in Defendant's memorandum do not qualify as competent evidence for adjudicating the Arbitration Motion, at least in regard to its request to compel arbitration. See Rountree v. Fairfax Cty. Sch. Bd., 933 F.2d 219,

establish both Mrs. Scales's apparent authority and Defendant's appropriate reliance thereon. (See, e.g., Docket Entry 2 at 2 ("It is obvious by the fact Mr. Scales was admitted to Brian Center [Winston-Salem] that [Mrs.] Scales had the authority to act on her husband's behalf in signing the admission documents, including the arbitration agreement, were [sic] relied upon by the Brian Center [Winston-Salem] staff.").) In light of the Affidavit, however, this paperwork fails to establish that the Agreement binds Mr. Scales.

To begin with, the arbitration agreement at issue here appears as a standalone contract (rather than an arbitration provision in, for example, an admissions contract) (see Docket Entry 2-1) and specifies that its acceptance does not affect one's admission to Brian Center Winston-Salem (see id. at 2). Accordingly, Mr. Scales's admission to and treatment by Brian Center Winston-Salem alone likely could not establish either ratification or estoppel as a matter of law. Moreover, nothing in the paperwork indicates that Mr. Scales reviewed or otherwise possessed knowledge of these

223 (4th Cir. 1991) (explaining that "[t]he arguments of counsel, absent any evidence such as sworn affidavits . . ., fail to meet the evidentiary standard necessary [at summary judgment]"); see also United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) ("The Government's claimed entitlement to summary judgment rests largely on its repeated contention in court submissions that it did not orally agree to a conditional plea. But an attorney's unsworn argument does not constitute evidence, and the Government has offered no affidavit, deposition, sworn statement, or other direct evidence that a Government agent did not make the oral promise."). Such arguments do reveal, however, the necessity of further factual development for resolving Defendant's arbitration request.

materials, including the Agreement.  (See, e.g., Docket Entry 2-2 at 14, 15, 27 (containing no signature in the section reserved for the resident's signature).)  In addition, Mrs. Scales executed at least some of the paperwork by signing (1) "For the Responsible Party" rather than "For the Resident" (id. at 14; see also id. at 27 (signing for "Responsible Party," but not "Resident" or "Family Representative")) and (2) on the line for "Responsible Party Signature (e.g., Family member)" rather than the lines for "Legal Representative Signature (e.g., Guardian)" or "Agent Signature (e.g., Agent through health care Power-of-Attorney or Surrogate Decision-maker)" (id. at 15).  Under the circumstances, further factual development remains necessary to assess both Mrs. Scales's authority and Defendant's reliance.  See, e.g., Bookman, 233 N.C. App. at 460-61, 756 S.E.2d at 895 ("Given that [family members] may have had authority to conduct the admission process for [the nursing home resident], and [the nursing home employee] averred that she was unaware of any limitation on this authority if it existed, there remains evidence which the trial court failed to address in its findings of fact and conclusions of law 'that would allow, but not require, a finding of apparent authority' to enter into the arbitration agreement.").

On this record, Defendant's request to stay proceedings and compel arbitration qualifies as premature.  Instead, "discovery regarding the formation and performance of the [Agreement]," Dillon, 2015 WL 6619972 at *3, should proceed.  See, e.g., Bookman

<u>v. Britthaven, Inc.</u>, No. COA 12-663, 226 N.C. App. 431, 741 S.E.2d 513 (table), 2013 WL 1314965, at *4 (2013) (remanding case for further factual findings because the existing "findings of fact regarding what occurred during the admission process [we]re not sufficient to address apparent agency" and "[t]he order contain[ed] no findings related to the question whether or not [the defendant nursing home] believed [the resident's family members] had authority to sign the agreement and whether any such belief was justified"). The Court will therefore authorize such discovery and deny Defendant's request to compel arbitration without prejudice to renewal of the request after completion of such discovery. <u>See Blankenship v. Seventeenth St. Assocs., LLC</u>, Civ. Action No. 3:11-0627, 2012 WL 10008266, at *1 (S.D. W. Va. Feb. 1, 2012) (granting leave "to conduct limited discovery on the formation and execution of the arbitration agreement" and denying without prejudice motion to compel arbitration and stay proceedings).

## CONCLUSION

The Court must determine the Agreement's enforceability and that determination cannot occur without discovery.

**IT IS THEREFORE ORDERED** that the Arbitration Motion (Docket Entry 2) **IS GRANTED** as to the request to conduct discovery and **DENIED WITHOUT PREJUDICE** as to the request to compel arbitration and stay proceedings.

**IT IS FURTHER ORDERED** that counsel for the parties promptly shall confer and, on or before October 20, 2017, shall file a Joint Status Report setting forth their shared or individual proposed discovery plans. Following submission of the Joint Status Report, the Clerk shall refer this matter back to the undersigned for further action.

This 5th day of October, 2017.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
